UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO. 14-80479-CIV-COHN/SELTZER

GEORGE EKINS, an individual,

    Plaintiff,

vs.

HARBOURSIDE FUNDING, LP, a
Florida limited partnership;
HARBOURSIDE FUNDING GP, LLC,
a Florida limited liability company; and
FLORIDA REGIONAL CENTER, LLC,
a Florida limited liability company,

    Defendants.

**PLAINTIFF GEORGE EKINS' REPLY IN SUPPORT OF MOTION FOR FINAL SUMMARY JUDGMENT**

Plaintiff, GEORGE EKINS ("Plaintiff"), by and through his undersigned counsel and pursuant to Local Rule 7.1(c), hereby files his Reply In Support of Motion for Final Summary Judgment.

**MEMORANDUM OF LAW**

**INTRODUCTION**

"The public policy of the State of Florida, as articulated in numerous court decisions, highly favors settlement agreements among parties and will enforce them whenever possible." *Wells Fargo Bank, NA v. Giglio*, 123 So. 3d 60, 60 (Fla. 4th DCA 2013) (citation omitted).

In this case, Plaintiff entered into a Settlement Agreement,[1] but he has not been paid according to its terms. These facts are **not disputed** by the Defendants. They require entry of final summary judgment in Plaintiff's favor on his lone claim for breach of settlement agreement.

---

[1] Copies of the Settlement Agreement are in the record as Exhibit 2 to the Declaration of Plaintiff George Ekins, and Exhibit B to the Affidavit of Nicholas A. Mastroianni.

Rather than cast any legitimate doubt on the validity of the claim, Defendants' Response to Plaintiff's Motion for Summary Judgment ("Response" or "Resp.") delves into a red herring around the issue of whether Plaintiff engaged in "unlicensed brokerage services" pursuant to the parties' Consulting Agreement. The Court should not be swayed. A central – indeed, paramount – purpose of the Settlement Agreement was to quiet disputes regarding the Consulting Agreement. By settling with Plaintiff, Defendants relinquished any ability to dispute the validity of the Consulting Agreement, including based on his alleged provision of "unlicensed brokerage services" or some other ground. As such, their claim that Plaintiff engaged in unlicensed activity under the Consulting Agreement – as a basis to avoid payment obligations owed under the Settlement Agreement – is a non-starter and should be rejected by the Court.

Defendants' remaining arguments regarding the status of Defendant, Harbourside Funding GP, LLC ("HFG") as a party to the Settlement Agreement, and whether notice of breach was provided to HFG, are similarly unavailing for the reasons discussed below.

The Court should enforce the plain terms of the Settlement Agreement and enter final judgment in Plaintiff's favor.

## REPLY TO DEFENDANTS' STATEMENT OF MATERIAL FACTS PURSUANT TO L.R. 56.1(a)[2]

1. Plaintiff denies that Paragraph 1 of Defendants' Statement of Material Facts ("SMF") contains any facts material to the action, because the nature of the Harbourside Place project and its sources of funding are immaterial to Plaintiff's claim for breach of the Settlement Agreement.

2. Plaintiff denies that Paragraph 2 of Defendants' SMF contains any facts material to the action, because the nature and requirements of the EB-5 Program are immaterial to Plaintiff's claim for breach of the Settlement Agreement.

3. Plaintiff admits that he entered into a Consulting Agreement[3] with Harbourside Funding GP, LLC ("HFG") and Florida Regional Center, LLC ("FRC"). It is also not disputed

---

[2] Local Rule 56.1(a) reads that, "Additional facts which the party opposing summary judgment contends are material shall be numbered and placed at the end of the opposing party's statement of material facts; the movant shall use that numbering scheme if those additional facts are addressed in the reply." Defendants' Response does not appear to address the material facts set forth in Plaintiff's summary judgment motion. Hence, Plaintiff will treat paragraphs 1 through 19 of Defendants' Statement of Material Facts as "additional facts" which Defendants "contend[] are material," and addresses them, in sequence, below.

by either side that Harbourside Funding, LP ("HFL") was a party to the Consulting Agreement. *See* Ekins Decl.[4] ¶ 4; Mastroianni Aff.[5] ¶¶ 8, 14.

4. Plaintiff denies that Paragraph 4 of Defendants' SMF contains any facts material to the action, because the substantive terms of the Consulting Agreement are immaterial to Plaintiff's claim for breach of the Settlement Agreement. Nevertheless, the Consulting Agreement speaks for itself. Plaintiff was to be paid compensation for performing consulting duties in connection with the marketing of the Harbourside Place project, and not for referring investors to any party. *See* Consulting Agreement at p. 1 (describing duties to be performed by Plaintiff). Thus, Defendants' characterization of the Consulting Agreement's terms in Paragraph 4 is incorrect.

5. Plaintiff denies that Paragraph 5 of Defendants' SMF contains any facts material to the action, because the substantive terms of the Consulting Agreement are immaterial to Plaintiff's claim for breach of the Settlement Agreement. Nevertheless, the Consulting Agreement speaks for itself. The Consulting Agreement did not provide for the payment of any commissions to Plaintiff, nor was Plaintiff to procure any investors pursuant to the Consulting Agreement. Thus, Defendants' characterization of the Consulting Agreement's terms in Paragraph 5 is incorrect.

6. Plaintiff denies that Paragraph 6 of Defendants' SMF contains any facts material to the action, because the substantive terms of the Consulting Agreement are immaterial to Plaintiff's claim for breach of the Settlement Agreement. Nevertheless, the Consulting Agreement speaks for itself. It is denied that the Consulting Agreement provided for Plaintiff to receive any fee for soliciting investors or raising investment capital, nor was Plaintiff to procure any investors pursuant to the Consulting Agreement. Thus, Defendants' characterization of the Consulting Agreement's terms in Paragraph 6 is incorrect.

7. Plaintiff denies that Paragraph 7 of Defendants' SMF contains any facts material to the action, because the substantive terms of the Consulting Agreement are immaterial to

---

[3] Copies of the Consulting Agreement are in the record as Exhibit 1 to the Declaration of Plaintiff George Ekins and Exhibit A to the Affidavit of Nicholas A. Mastroianni.

[4] The Declaration of Plaintiff George Ekins in Support of Motion for Final Summary Judgment ("Ekins Decl.") was filed with the Court on July 11, 2014.

[5] The Affidavit of Nicholas A. Mastroianni in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Mastroianni Aff.") was filed with the Court on August 15, 2014.

Plaintiff's claim for breach of the Settlement Agreement.  Section 475.01 is not relevant to this case because whether or not Plaintiff acted as a broker pursuant to the Consulting Agreement is immaterial to whether Defendants breached the Settlement Agreement.  Furthermore, Plaintiff did not act as a broker pursuant to section 475.01 based on the plain terms of the Consulting Agreement, which speaks for itself.  Thus, Defendants' characterization of Plaintiff's role pursuant to the Consulting Agreement is incorrect.

8. Plaintiff denies that Paragraph 8 of Defendants' SMF contains any facts material to this action, because whether or not Plaintiff is a licensed broker is immaterial to Plaintiff's claim for breach of the Settlement Agreement.

9. Paragraph 9 of Defendants' SMF recites the language of a statute, which is not a fact, and therefore cannot be a fact material to this action.  Furthermore, section 475.01 is not relevant to Plaintiff's claim for breach of Settlement Agreement because the Settlement Agreement is not a "contract for a commission or compensation for any act or service enumerated in s. 475.01(3)" pursuant to section 475.41.

10. Plaintiff admits that a dispute arose concerning payment due to him from HFG, HFL, and FRC under the Consulting Agreement.

11. Plaintiff admits that Defendants failed to pay him under the Consulting Agreement.  It is not material whether or not Plaintiff was allegedly providing unlicensed broker services because through this action, Plaintiff is seeking to enforce the Settlement Agreement and not the Consulting Agreement.  Furthermore, Plaintiff denies that he was providing unlicensed broker services for the reasons set forth in Paragraphs 4 through 7 above.

12. Plaintiff admits that he entered into a Settlement Agreement with HFG, HFL, and FRC in order to resolve all disputes related to or arising out of the Consulting Agreement.  *See* Settlement Agreement §§ 5, 7, 8.

13. Defendants' characterization of the Settlement Agreement in Paragraph 13 of the SMF is false and contrary to the document's express terms.  Section 8 of the Settlement Agreement states, "The Settlement Agreement is being entered into by the Parties as a compromise of disputed claims and **is not for the payment of any particular fee payable to Consultant pursuant to the Consulting Agreement**."  Ekins Decl. Ex. 2 § 8 (emphasis added).  This language directly contradicts Defendants' statement that, "The Settlement Agreement was

4

intended to provide Ekins with partial payment for unlicensed brokerage services as defined under Fla. Stat. §475.01."

14.     Defendants' characterization of the Settlement Agreement in Paragraph 14 of the SMF is false and contrary to the agreement's express terms.  Section 8 of the Settlement Agreement states, "The Settlement Agreement is being entered into by the Parties as a compromise of disputed claims and **is not for the payment of any particular fee payable to Consultant pursuant to the Consulting Agreement**."  Ekins Decl. Ex. 2 § 8 (emphasis added).  This language directly contradicts Defendants' statement that the Settlement Agreement, "created a mechanism for Ekins to, in effect, receive compensation for unlicensed brokerage services."

15.     Plaintiff admits that HFG signed the Settlement Agreement.  However, the remainder of Paragraph 15 of Defendants' SMF is incorrect because: (1) HFG is the general partner, not managing member, of HFL; and (2) HFG is a party to the Settlement Agreement because (a) HFG was a party to the Consulting Agreement, which is the basis of the dispute resolved by the Settlement Agreement and (b) while HFL and FRC are listed as two of the three entities comprising the "Company" in the first paragraph of the Settlement Agreement, the third named entity, "Harbourside Place GP, LLC," does not exist.  Beck Decl.[6] ¶¶ 4, 5 & Exs. A, B.

16.     Plaintiff admits he has received only $125,000 under the Settlement Agreement.

17.     Plaintiff admits that notice of breach of the Settlement Agreement was provided to FRC and HFL by letter from his counsel dated January 28, 2014.  Ekins Decl. Ex. 4.  The address where this notice was delivered is also HFG's address.  *See* Beck Decl. ¶ 5 & Exs. B-D.  Furthermore, the second paragraph of the notice states that, "Notice is hereby provided that . . . Harbourside Place GP, LLC . . . have failed to timely cure . . ."; and "Harbourside Place GP, LLC" is the erroneous name for HFG used in the Settlement Agreement.

18.     Plaintiff denies Paragraph 18 of Defendants' SMF.  The January 28, 2014 letter as well as the December 10, 2013 Notice of Default (Ekins Decl. Ex. 3) reasonably put HFG on notice of its breach of the Settlement Agreement, for the reasons set forth in Paragraphs 15 and 17 above.

19.     Plaintiff filed suit alleging a claim for breach of Settlement Agreement against Defendants on April 7, 2014, not April 5, 2014 as stated in Paragraph 19 of Defendants' SMF.

---

[6]     The Declaration of Jared H. Beck in Support of Plaintiff's Motion for Final Summary Judgment ("Beck Decl.") was filed with the court on July 11, 2014.

**ARGUMENT**

As an initial matter, the Court should deem admitted all of the facts set forth in Plaintiff's Statement of Material Undisputed Facts Pursuant to L.R. 56.1, because Defendants have failed to file a statement controverting these facts. *See* L.R. 56.1(b); *Rosa-Nales v. Carnival Corp.*, 2013 WL 7219411, *1 (S.D. Fla. Dec. 11, 2013) ("The facts set forth in Defendants' Statement of Facts are deemed admitted to the extent that they are supported by evidence in the record and are not specifically disputed by Plaintiff. S.D. Fla. L.R. 56.1(b)[.]").

**I.     The Parties' Settlement Agreement Is Not An "Illegal Contract"; Section 475.41 Is Irrelevant**

Settlement agreements are an essential feature of our legal system. They permit businesses to resolve disputes while avoiding the expense and uncertainty of litigation. This is why Florida public policy decidedly favors the enforcement of settlement agreements whenever possible. *See Wells Fargo*, 123 So. 3d at 60.[7]

Here, Defendants' principal defense to Plaintiff's claim for breach of the parties' Settlement Agreement – an agreement under which Defendants have already paid $125,000 but owe $775,000 more – does violence to the very concept of "settlement." They say the Settlement Agreement is "an illegal contract" that the Court cannot enforce. Resp. at 7. They get to this conclusion by first alleging that the parties' Consulting Agreement is invalid under section 475.41, Florida Statutes. *Id.* at 3 ¶ 8. Then, on Defendants' theory, the purported illegality of the Consulting Agreement – which created the dispute forming the very basis for the parties' settlement – lives on to infect and destroy the validity of the Settlement Agreement because the latter "constitutes a mechanism for the indirect payment of commissions under the Consulting Agreement and is subject to Fla. Stat. § 475.41." *Id.* at 7.

This is absurd. The whole point of the Settlement Agreement was to resolve any dispute over the Consulting Agreement. Under Defendants' logic, parties would never be capable of settling a dispute where there was an alleged violation of section 475.41 because the alleged violation would potentially taint and invalidate any agreement to settle the matter. Indeed, the Settlement Agreement has explicit language effectively removing it from the purview of section 475.41: the agreement is "a compromise of disputed claims and is not for the payment of any

---

[7]     As a corollary proposition, "[b]ecause of the public concern that freedom of contract not be lightly interfered with, courts should exercise extreme caution when called upon to declare transactions void as contrary to public policy." *Garfinkel, P.A. v. Mager*, 57 So. 3d 221, 224 (Fla. 5th DCA 2011).

particular fee payable to Consultant pursuant to the Consulting Agreement." Settlement Agreement ¶ 8. And if that language were not sufficient to preclude the Settlement Agreement from being a contract subject to section 475.41 (the statute is titled "Contracts of unlicensed person for commissions invalid"), it also contains broad releases wherein both sides release all claims related to or arising out of the Consulting Agreement. *See id.* ¶¶ 5, 7. In other words, by settling with Plaintiff, Defendants relinquished any ability to contest the Consulting Agreement and they agreed to pay him $900,000. They cannot now evade the settlement obligation by litigating issues already put to rest by the Settlement Agreement itself.

No case lends even a shred of credibility to Defendants' radical position, and their discussion of the one published decision on point is misleading. *In re Vilsack*, 356 B.R. 546 (Bankr. S.D. Fla. 2006) examined the express language of a Letter Agreement and found it did not violate section 475.41 because "it does not require OTDC to perform any of the services enumerated in section 475.01(3)[.]" *Id.* at 551. Like the Letter Agreement in *Vilsack*, the parties' Settlement Agreement does not require Plaintiff to perform any of the services enumerated in section 475.01(3). It only requires him to release his claims relating to the Consulting Agreement, as one would expect from a settlement agreement. Accordingly, the Settlement Agreement does not violate the statute.[8] [9]

## II.   There Is No *In Pari Delicto* Defense Available To Defendants

Defendants' *in pari delicto* defense also fails for multiple reasons.

---

[8]   The same analysis also shows the Consulting Agreement does not violate the statute. Like the Letter Agreement in *Vilsack*, the Consulting Agreement creates a long-term business relationship between Plaintiff and Defendants and entitles Plaintiff to a consulting fee. *Compare* Consulting Agreement at p. 1 *with Vilsack*, 356 B.R. at 550-51. Moreover, and also akin to the *Vilsack* Letter Agreement, the Consulting Agreement is not a contract for payment of real estate commissions for services or acts enumerated in section 475.01(3). *See id.* at 551. Furthermore, the business services that were required of Plaintiff under the Consulting Agreement were to be performed "within Asia" (*see* Consulting Agreement at p.1 ¶ 1), and the statute does not apply to services performed outside of Florida. *See Tassy v. Hall*, 429 So. 2d 30, 34 (Fla. 5th DCA 1983).

That said, the Court need not reach the validity of the Consulting Agreement under the statute, because Plaintiff is seeking solely to enforce the Settlement Agreement, which is not subject to section 475.41 under any colorable reading.

[9]   Defendants' contention that the pertinent holding of *Vilsack* is based on finding that, "the real estate commission was paid to . . . a licensed broker" (Resp. at 7) is flat wrong – that language is taken from a different part of the opinion finding a different agreement (the "BAP Contract") to be valid under section 475.42(1). *See Vilsack*, 366 B.R. at 552.

7

First, it rests on the same flawed premise that Defendants may challenge the enforceability of the Settlement Agreement by litigating the issue of whether Plaintiff "acted as an unlicensed broker" pursuant to the Consulting Agreement. Resp. at 10. But, as already discussed, the parties' express intention was for the Settlement Agreement to resolve disputes over the Consulting Agreement. Enforcing the Settlement Agreement's plain intent therefore requires rejecting the *in pari delicto* defense.[10]

Second, Defendants' resort to *in pari delicto* fundamentally misconstrues the doctrine. Critically, "In pari delicto refers to the plaintiff's participation in the **same wrongdoing** as the defendant." *Gastaldi v. Sunvest Resort Communities, LC*, 2010 WL 457243, *11 (S.D. Fla. Feb. 3, 2010) (quoting *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1044 (Fla. 2d DCA 2007) (internal quotation marks omitted) (emphasis added)). Here, Defendants allege that Plaintiff engaged in "wrongdoing" by providing unlicensed broker services. But the premise of Plaintiff's claim is not that Defendants also engaged in unlicensed broker services or violated section 475.41 (or any other statute for that matter), but that they failed to pay him under the Settlement Agreement. Thus, even if it could be established that Plaintiff provided unlicensed broker services, *in pari delicto* would not apply because there is no identity of wrongdoing between the parties. *See Gastaldi*, 2010 WL 475243, at *12-*13 (rejecting *in pari delicto* defense on summary judgment where defendant deceptively marketed and sold condos while plaintiffs lied to their lenders to obtain favorable loans).[11]

Third, even assuming *arguendo* Defendants could establish a prima facie defense of *in pari delicto*, it would crumble in the face of Florida's pronounced public policy upholding

---

[10] Thus, the case relied upon by Defendants, *Earth Trades, Inc. v. T & G Corp.*, 108 So. 3d 580 (Fla. 2013) is inapposite. *Earth Trades* analyzed *in pari delicto* as an unlicensed subcontractor's defense to a general contractor's breach of construction contract action, where the subcontractor argued that the general contractor could not enforce the contract because it knowingly hired an unlicensed subcontractor in violation of section 489.128, Florida Statutes. *See id.* at 582. Here, however, Plaintiff is seeking to enforce a Settlement Agreement that expressly resolved any disputes between the parties under the Consulting Agreement, the latter of which is the whole basis for Defendants' meritless assertion that Plaintiff engaged in unlicensed activities.

[11] To put it another way: as Defendants acknowledge, *in pari delicto* means that "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." Resp. at 9. Here, Defendants allege that the "wrongdoing" was Plaintiff acting as an unlicensed broker; however, the damages Plaintiff is seeking result not from any broker activities but from Defendants' breach of the Settlement Agreement. And the Settlement Agreement explicitly provides that the money owed Plaintiff is for the compromise of disputed claims and **not** for fees from the Consulting Agreement. *See* Settlement Agreement § 8.

8

private settlement agreements. *See Kulla v. E.F. Hutton & Co., Inc.*, 426 So. 2d 1055, 1057 n.1 (Fla. 3d DCA 1983) ("since [*in pari delicto*] is founded on public policy, it may give way to a supervening public policy"). Simply put, allowing Defendants to nullify a settlement by raising the validity of the Consultant Agreement – an issue subject to and settled by the Settlement Agreement – would undermine public confidence in the validity of settlement agreements.

Defendants' argument should be seen for what it is – a transparent and disingenuous attempt to back out of a settlement lacking any basis in law or fact.

## III. HFG Is A Party To The Settlement Agreement

Finally, Defendants' Response just adds further proof that the only common-sense reading of the Settlement Agreement is that Harbourside Funding GP, LLC ("HFG") is a party, and the reference to "Harbourside Place GP, LLC" in the first paragraph is a scrivener's error replacing "Funding" with "Place." *See Lanoue v. Rizik*, 987 So. 2d 724, 726 (Fla. 3d DCA 2008) (affirming trial court's common-sense interpretation of contractual choice of law provision on summary judgment in light of obvious scrivener's error).

First, Defendants admit "Harbourside Place GP, LLC" is a non-existent entity. Resp. at 8. Thus, unless it is recognized that this is the incorrect name for an actually existing entity, then the contract construction will not – as it must – give meaning to all of the agreement's provisions. *See Ceradini v. IGT Servs., Inc.*, 959 So. 2d 348, 351 (Fla. 3d DCA 2007) ("it is a cardinal principal of contract construction that agreements are to be interpreted so as to give meaning to all their provisions").

Second, the fact there are two signature blocks for the three entities comprising the "Company" provides no support for a contrary reading. Rather, the second block shows that Nicholas A. Mastroianni II signed on behalf of two entities, HFL and HFG,[12] lending further proof that HFG is a party, and that HFG's name was incorrectly transcribed in the first paragraph.

Third, Defendants acknowledge that the parties to the Settlement Agreement should correspond to the antecedent Consulting Agreement. Resp. at 9. Mr. Mastroianni testified that HFG was a party to the Consulting Agreement, as did Plaintiff. *See* Mastroianni Aff. ¶ 8 ("In 2011, Florida Regional Center, LLC, Harbourside Funding, LP, and Harbourside Funding GP, LLC entered into a Consulting Agreement with George Ekins . . . ."); ¶ 13 ("Florida Regional Center, Harbourside Funding, GP, LLC and Harbourisde Funding, LP stopped paying George

---

[12] There is no principle of law preventing one signature from binding more than one entity.

Ekins commissions under the Consulting Agreement."); Ekins Decl. ¶ 4.  There is no disagreement on this issue.

*Lanoue*, 987 So. 2d 724 is on all fours.  At issue in *Lanoue* was a contract with a choice of law provision stating that, "This Agreement shall be governed in all respects by the laws of the Province of Ontario and the **State of Miami.**" *Id.* at 726.  The appellate court upheld the lower court's "common sense reading," on summary judgment, of the provision as meaning "the State of Florida, not the 'State of Miami." *Id.*   The conclusion was based on: (1) Florida corporate documents supporting that "State of Miami" was a scrivener's error; and (2) the lack of "plausible argument or showing that the reference should have been to the City of Miami." *Id.*  Similarly, Plaintiff has supplied ample evidence that "Harbourside Place GP, LLC" was a scrivener's error intended to mean "Harbourside Funding GP, LLC," and Defendants have provided no plausible argument or showing otherwise.

Accordingly, there is no genuine factual issue as to whether HFG is a party to the Settlement Agreement, or whether the Settlement Agreement should be enforced.

DATED: September 2, 2014

RESPECTFULLY SUBMITTED,

/s/ Jared H. Beck
By: Jared H. Beck

**BECK & LEE TRIAL LAWYERS**
JARED H. BECK
Florida Bar No. 20695
ELIZABETH LEE BECK
Florida Bar No. 20697
Corporate Park at Kendall
12485 SW 137th Ave., Suite 205
Miami, Florida 33186
Telephone:     (305) 234-2060
Facsimile:     (786) 664-3334
jared@beckandlee.com
elizabeth@beckandlee.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2014, a true an correct copy of the foregoing

> *PLAINTIFF GEORGE EKINS' REPLY IN SUPPORT OF MOTION FOR FINAL SUMMARY JUDGMENT*

was served via e-mail on all counsel of record or pro se parties identified on the attached service list.

                                /s/ Jared H. Beck
                                  Jared H. Beck

**SERVICE LIST**
*Ekins v. Harbourside Funding, LP et al.*
**Case No. 14-80479-COHN/SELTZER**

Mitchell W. Berger, Esq.
Zachary P. Hyman, Esq.
BERGER SINGERMAN LLP
350 East Las Olas Blvd., Suite 1000
Fort Lauderdale, Florida 3301
Telephone:   (954) 525-9900
Facsimile:   (954) 523-2872
mberger@bergersingerman.com;
zhyman@bergersingerman.com

**Counsel for Defendants**